UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DILLARD UNIVERSITY ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 06-4138** |
| **LEXINGTON INSURANCE COMPANY ET AL.** | **SECTION: "S" (1)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that the motion for partial summary judgment of Dillard University, Dillard University Apartments, Ltd., and Gentilly Gardens Corporation on the issue of coverage for ensuing loss is **DENIED**. (Document #231.)

**IT IS FURTHER ORDERED** that the motion for partial summary judgment of Dillard University, Dillard University Apartments, Ltd., and Gentilly Gardens Corporation on the issue of coverage for extra expenses is **GRANTED**. (Document #235 extra expenses issue.)

### I. BACKGROUND

Dillard University, Dillard University Apartments, Ltd., and Gentilly Gardens Corporation (collectively, Dillard)[1] filed a complaint against Lexington Insurance Company

---

[1] Dillard University Apartments, Ltd and Gentilly Gardens Corporation are affiliated, subsidiary, and/or associated companies of Dillard University.

(Lexington), Axis Specialty Insurance Company (Axis), and RSUI Indemnity Company (RSUI) to recover for damages as a result of Hurricane Katrina. Dillard and other institutions participated in an insurance program procured and administered by Educational and Institutional Insurance Administrators, Inc.

Lexington, the primary insurer, issued an "all risk" commercial property insurance policy in the amount of $50,000,000, Axis issued an excess "all risk" commercial property insurance policy in the amount of $25,000,000 and RSUI issued the next layer excess "all risk" policy with a limit of $425,000,000 in excess of $75,000,000. The primary and excess policies limit flood coverage to $100,000,000 through flood sublimits.[2] Lexington and Axis have paid the policy limits and are no longer involved in the litigation. The remaining litigation focuses on RSUI's excess coverage.

Dillard and RSUI filed multiple motions and cross-motions for partial summary judgment. This order addresses Dillard's motions for partial summary judgment regarding coverage for ensuing loss and extra expenses.

## II. DISCUSSION

**A. Legal standard**

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. P. 56(c). If the moving party meets the initial burden of

---

[2] A total of $100,000,000 has been paid for flood damage.

establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The nonmovant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

The interpretation of an insurance contract and its exclusions is a question of law.[3] See Jarvis Christian Coll. V. Nat'l Union Fire Ins. Co. Of Pittsburgh, Pa., 197 F.3d 742,746 (5th Cir. 2000). Under Louisiana law, the general rules of contract interpretation apply to determine the common intent of the parties to the contract. See Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 630 So. 2d 759, 763 (La. 1994). The intent of the parties as reflected in the policy determines the extent of the coverage. Id. The words of an insurance policy are given their "general, ordinary, plain, and proper meaning . . . unless [they] have acquired a technical meaning." Id. An exclusion from coverage must be clear and unmistakable. See Roger v. Estate of Moulton, 513 So. 2d 1126, 1130 (La. 1987). When the language is clear, it must be enforced as written. See Reynolds v. Select Props. Ltd., 634 So.2d 1180, 1183 (La. 1994). Exclusionary clauses are strictly construed against the insurer. See Borden, Inc. v. Howard Trucking, 454 So. 2d 1081 (La. 1983). If the language of the exclusion is subject to more than one reasonable interpretation, the interpretation that favors coverage is applied. See Reynolds, 634 So.2d at 1183. The insurer bears the burden of proving exclusions from coverage. Tunstall v. Stierwald,

---

[3] In a separate motion, RSUI argues that, when there is a conflict between the law of the State of Louisiana and the State of Illinois, Illinois law applies. RSUI acknowledges that there is no conflict between the two state laws on the issues of ensuing loss and extra expense.

3

809 So.2d 916, 921 (La. 2002).

**B. Ensuing loss**

Dillard seeks a partial summary judgment that, assuming for purposes of this motion "that the peril of flood was the predominant cause of Dillard's damages, the sublimits and aggregates in RSUI's and the other insurers' policies do not apply to any 'ensuing' loss or damage suffered by Dillard, which is not otherwise excluded by the policies."

RSUI contends that flood waters caused most of Dillard's damages, and the flood sublimit in its policy limits recovery for any flood-related damages to $25,000,000 (a total of $100,000,000 under all Dillard policies). RSUI argues that Dillard's motion is based on the faulty premise that there are ensuing losses that are separate and distinct from the flood.

The ensuing loss clauses of the three policies are identical:

> 3. LIMITS OF LIABILITY
> . . . .
> With respect to the peril of flood, if the peril of flood is the predominant cause of loss or damage, any ensuing loss or damage not otherwise excluded herein shall not be subject to any sublimits or aggregates specified above.

In this case, the ensuing loss exception is an exception to a limitation or sublimit, not to an exclusion. The fact that a sublimited "event is the "but for" cause of the ensuing loss does not necessarily preclude coverage for the ensuing loss." See Holden v. Connex-Metalna, 2000 WL 1876338, *6 (E.D.La. Dec. 21, 2000). To meet the ensuing loss exception to the sublimit, the damage must be a separable event "different in kind, not merely different in degree." Alton Ochsner Medical Foundation v. Allendale Mut., 219 F.3d 501, 506 (5th Cir. 2000). The loss must not be "merely a manifestation or worsening" of the flood damage. See Holden v. Connex-

Metalna, 2000 WL 1876338 at *7.

Dillard's claimed ensuing losses are costs to document losses and prepare insurance claims; costs to operate the university in temporary, off-campus facilities; demolition and increased costs of construction; debris removal; business interruption; consequential damages to property insured; and soil remediation costs.

Under the clear language of the policy, any ensuing loss, resulting predominantly from the covered loss of flood, that is not otherwise excluded, is not subject to the flood sublimits. However, under the jurisprudence in this circuit, the losses are not ensuing losses under the policy because they are a manifestation or worsening of the flood damage, not the result of an event separable from the flood damage.[4] Accordingly, Dillard is not entitled to judgment as a matter of law on the issue of ensuing losses.

**C. Extra expenses**

Following Hurricane Katrina, Dillard could not reoccupy its campus, but recognized the urgent need to open the university at a temporary location. Dillard set up temporary administrative, classroom, and housing facilities for the spring semester of the 2005-2006 academic year, beginning on January 9, 2006. Dillard presented three detailed options to Dave Reger, RSUI's insurance adjuster, and indicated that it preferred to lease space at the Hilton Riverside Hotel and Convention Center for classrooms and housing and to use Tulane's science

---

[4] The conclusion that these are not "ensuing" losses under the policy does not address the availability of coverage under another section of the policy.

labs and library at a cost of $20,962,570.[5]

Reger obtained "coverage confirmation" for the proposal from Lexington in December 2005. See Plaintiff's exhibit K. On March 30, 2009, years after the coverage confirmation, RSUI submitted the expert reports of Michael Webster and David Reger opining that Dillard had not sustained any recoverable extra expenses. Webster opined that Dillard's operational costs did not exceed the expected or projected total operating costs;[6] therefore, there was no recoverable extra expense. Reger concurred, adding that the extra expenses were the direct result of flood and, therefore, subject to the sublimit which had already been exhausted.

The coverage section of the three policies provide for extra expenses as follows:

**8. COVERAGE**

Except as hereinafter excluded, this policy covers:
. . . .
**B. Extra Expense**

    (1) Extra Expense incurred resulting from loss, damage, or destruction covered herein during the term of this policy to real or personal property as described in Clause 8.A.

    (2) "Extra Expense" means the excess of the total cost chargeable to the operation of the Insured's business over and above the total cost that would normally have been incurred to conduct the business had no loss or damage

---

[5] Dillard's extra expense claim totals $21,420,421.

[6] Webster projected the total cost that Dillard would normally have incurred to conduct its business had Hurricane Katrina not occurred at $98,148,482. Dillard's total actual operational costs, including the extra expenses, was calculated at $85,769,809. Webster subtracted the actual operations costs during the period of recovery from its projected total cost that it normally would have incurred to determine there was no excess or recoverable extra expense under the RSUI policy and determined that Dillard saved $12,378,674 in operational costs by locating off campus.

occurred.

Dillard argues that the policy provides coverage for "out of the ordinary" expenses Dillard would not normally have incurred but for Hurricane Katrina.[7] Dillard contends that it could not return to its campus, and the cost of temporary operations was not a normal cost to Dillard. Dillard argues that it incurred extra expense to reopen the university, enabling it to retain tuition and fees and ensuring that the university would be able to remain open in the future because Dillard had not reopened, there was a chance that it would have ceased to exist.

RSUI contends that, in order for Dillard to recover under the excess expenses portion of the policy, Dillard's actual operating expenses for the temporary arrangement must be in excess of the costs that would normally have been incurred to conduct the business had no loss or damage occurred.[8]

---

[7] Dillard contends that the RSUI policy covers expenses incurred to reduce Dillard's total loss. RSUI contends that its policy does not include the coverage that is found in section G of the Lexington policy for expense to reduce loss.
  The Lexington policy includes the following provision:
  G. <u>Provisions Applicable to Business Interruption, Extra Expense, Rental Value and Royalties Coverages</u>
  . . . .
  (3) Expense to Reduce Loss: This policy also covers such expenses incurred for the purpose of reducing any loss under this policy, even though such expenses may exceed the amount by which the loss under this policy is thereby reduced.
The provision is not found in the RSUI policy.

[8] RSUI argues that the Hilton expenses have not been denied because they are included in the actual operational expense and considered and accepted under the business interruption calculation as continuing operating expenses, subject to the applicable business interruption sublimit.

7

The court concludes that the expense is a covered expense because it represents costs that would not normally have been incurred by Dillard if no loss or damage had occurred. The language of the policy does not support RSUI's interpretation that the expenses must be in excess of Dillard's normal operating expenses. The interpretation advanced by RSUI is nonsensical because the services provided under the temporary arrangement are not the same services normally provided. Indeed, it would be a coincidence if the temporary services costs wee more when fewer services were being provided under the temporary arrangement.

Because Dillard would not normally have incurred any of the cost of a temporary operation, the full amount is "over and above" or "in excess of" Dillard's total cost of normal operations. Accordingly, Dillard's motion for partial summary judgment on the issue of extra expense is granted.

### III. CONCLUSION

On the issue of ensuing loss, there are no disputed issues of material fact; however, the losses are not the result of an event separable from the flood damages, and Dillard is not entitled to judgment as a matter of law. On the issue of extra expense, under the clear and unambiguous language of the policy, Dillard incurred extra expenses in setting up a temporary operation for the university, and it is entitled to judgment as a matter of law.

New Orleans, Louisiana, this   3rd   day of June, 2009.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**